UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re:                                          :
                                                :
AMERICAN LAFRANCE, LLC,                         :        Chapter 11
                                                :        Case No. 08-10178
                           Debtor.              :        (Bankr. D. Del.)
                                                :
----------------------------------------------------------- X
                                                :
FREIGHTLINER LLC,                               :
                                                :
                           Plaintiff,           :        Case No. 08-cv-05625 (BSJ) (DFE)
                                                :
     - against -                                :
                                                :
AMERICAN LAFRANCE, LLC,                         :
                                                :
                           Defendant.           :
                                                :
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION OF FREIGHTLINER LLC,
PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9027,
TO REMAND, OR, IN THE
ALTERNATIVE, PURSUANT TO
28 U.S.C. SECTION 1334, TO ABSTAIN**

625350.6

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

ARGUMENT  THE NEW YORK ACTION SHOULD BE REMANDED ................................. 7

I.      ALF'S NOTICE OF REMOVAL WAS UNTIMELY ................................................ 7

II.     THE CLAIMS IN THE NEW YORK ACTION DO NOT "ARISE
        UNDER" TITLE 11, AND DO NOT "ARISE IN" AND ARE NOT
        "RELATED TO" THE DELAWARE BANKRUPTCY ACTION .................................. 10

        A.     The Claims Asserted In The New York  Action Do Not "Arise
               Under" Title 11 ......................................................................................... 10

        B.     The Claims In The New York Action  Did Not "Arise In" The
               Delaware Bankruptcy ............................................................................... 11

        C.     The New York Action Is Not  "Related To" The Delaware
               Bankruptcy ............................................................................................... 11

        D.     The New York Action Should Be Remanded Because  Federal
               Subject Matter Jurisdiction Totally Is Lacking ....................................... 14

III.    EVEN IF THERE IS "RELATED TO" JURISDICTION,  THE COURT
        CAN AND SHOULD REMAND THE  NEW YORK ACTION BASED
        ON EQUITABLE PRINCIPLES ............................................................................... 15

IV.     EVEN IF THERE IS "RELATED TO" JURISDICTION,  THE COURT
        CAN AND SHOULD ABSTAIN AND REMAND ...................................................... 16

CONCLUSION .................................................................................................................... 18

## TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Aegis Mortgage Corp., et al.,*
    No. 07-11119, Slip Op. (Bankr. D. Del. Nov. 9, 2007) ...................................... 9

*In re Am. Home Mortgage Holdings, Inc.,*
    No. 07-11047, No. 07-51738, 2008 WL 2600987 (Bankr. D. Del. June 27,
    2008) ............................................................................................................... 11, 12

*In re Ames Dept. Stores, Inc.,*
    No. 01-42217, No. 01-8153, 2006 WL 1288586  (Bankr. S.D.N.Y. Apr.
    19, 2006) ................................................................................................................ 17

*In re Bay Point Assocs.,*
    No. 07-1492, 2008 WL 822122 (E.D.N.Y. March 19, 2008) ........................... 17

*Celotex Corp. v. Edwards,*
    514 U.S. 300, 115 S. Ct. 1493 (1995) ............................................................ 11, 12

*In re Eastland Partners Ltd. P'ship,*
    199 B.R. 917 (Bankr. E.D. Mich. 1996) .............................................................. 12

*Guccione v. Bell,*
    No. 06-492, 2006 WL 2032641 (S.D.N.Y. July 20, 2006) ........................... 12, 16

*In re H & L Developers, Inc.,*
    178 B.R. 71 (Bankr. E.D. Mich. 1996) ................................................................ 12

*In re Housecraft Indus. USA, Inc.,*
    310 F.3d 64 (2d Cir. 2002) ..................................................................................... 10

*In re Insilco Techs., Inc.,*
    330 B.R. 512 (Bankr. D. Del. 2005) ..................................................................... 14

*In re Jevic Holding Corp., et al.,*
    No. 08-11006, Slip Op. (Bankr. D. Del. June 19, 2008) .................................... 9

*In re Johns-Manville Corp.,*
    517 F.3d 52 (2d Cir. 2008) ..................................................................................... 13

*In re Lawson,*
    228 B.R. 195 (Bankr. E.D. Tenn. 1998) .............................................................. 9

*Linardos v. Fortuna,*
    157 F.3d 945 (2d Cir. 1998) ................................................................................... 15

*Mt. McKinley Ins. Co. v. Corning Inc.,*
    399 F.3d 436 (2d Cir. 2005) ................................................................. 17

*In re Methyl Tertiary Butyl Ether Products Liab. Litig.,*
    488 F.3d 112 (2d Cir. 2007) ................................................................... 9

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir.1984) ............................................................ 11, 13

*In re Pessodelis,*
    234 B.R. 52 (Bankr. W.D. Pa. 1999) ...................................................... 8

*In re Refco, Inc. Sec. Litig.,*
    No. 07 MDL 1902, No. 07-11604, 2008 WL 1827644 (S.D.N.Y. Apr. 221,
    2008) ........................................................................................................ 11

*In re Resorts Int'l, Inc.,*
    372 F.3d 154 (3d Cir. 2004) ...................................................... 11, 12, 13

*In re Seven Fields Dev. Corp.,*
    505 F.3d 237 (3d Cir. 2007) ................................................................. 13

*In re Shenango Group,*
    501 F.3d 338 (3d Cir. 2007) ................................................................. 13

*Stoe v. Flaherty,*
    436 F.3d 209 (3d Cir. 2006) .......................................................... 10, 11

*Syngenta Crop Prot., Inc. v. Henson,*
    537 U.S. 28, 123 S. Ct. 366 (2002) ........................................................ 9

*Tech. Outsource Solutions, LLC v ENI Tech., Inc.,*
    No. 02-cv-6433, 2003 WL 25214 (W.D.N.Y. Jan. 23, 2003) ................ 17

*Winstar Holdings, LLC v. Blackstone Group L.P.,*
    No. 07-4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ................. 11

*In re WorldCom, Inc. Sec. Litig.,*
    293 B.R. 308 (S.D.N.Y. 2003) .............................................................. 11

*In re WorldCom, Inc.,*
    351 B.R. 130, 133 (Bankr. S.D.N.Y. 2006) .......................................... 12

## STATUTES AND RULES

11 U.S.C. § 362 ........................................................................... *passim*

28 U.S.C. § 1332 ................................................................................. 15

28 U.S.C. § 1334 ......................................................................... *passim*

28 U.S.C. § 1441 ................................................................................................ 14

28 U.S.C. § 1452 ......................................................................................... *passim*

FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001 ................................................. 7,8

FEDERAL RULE OF BANKRUPTCY PROCEDURE 9014 ..................................................... 8

FEDERAL RULE OF BANKRUPTCY PROCEDURE 9027 ........................................... *passim*

## OTHER AUTHORITIES

10 COLLIER ON BANKRUPTCY ¶ 9027.05 (2008) ...................................................... 9

1 COLLIER ON BANKRUPTCY ¶ 3.01 (2008)  ............................................................ 9

Freightliner LLC ("Freightliner")[1], by and through its attorneys, Friedman Kaplan Seiler & Adelman LLP, submits this memorandum in support of its motion, pursuant to Federal Rule of Bankruptcy Procedure 9027 ("Rule 9027"), to remand, or, pursuant to 28 U.S.C. section 1334, to abstain from, this action.

## PRELIMINARY STATEMENT

Apparently seeking some perceived strategic advantage, defendant American LaFrance, LLC ("ALF") has removed to this Court a garden-variety breach of contract action that Freightliner previously had commenced in the Supreme Court of the State of New York, New York County. According to its petition, ALF's basis for removal was Section 1452(a), 28 U.S.C., which permits removal of actions over which United States District Courts have bankruptcy subject matter jurisdiction. ALF's removal was improper, and remand is appropriate, for several reasons.

First, removal was untimely. Bankruptcy Rule of Procedure 9027(a)(2) provides in pertinent part that a removal petition pursuant to Section 1452(a) must be filed within ninety days of the filing of a bankruptcy petition. ALF, however, filed its bankruptcy petition in Delaware almost six months ago, and did not avail itself of procedures that would have extended the ninety-day period. Furthermore, although Rule 9027(a)(2) additionally provides for removal within thirty days of an "order terminating" the automatic stay imposed by Section 362 of the Bankruptcy Code, there has been no motion to lift the stay with respect to the removed action and, accordingly, there has been no order of the bankruptcy court terminating the stay.

Second, bankruptcy jurisdiction does not exist over the removed action. The only bankruptcy jurisdiction potentially applicable here is that given by Section 1334(b), 28 U.S.C., to

---

[1] Freightliner LLC is now known as Daimler Trucks North America LLC.

625350.6

District Courts over proceedings "related to" bankruptcy cases. There is no "related to" jurisdiction, however, when the proceeding at issue would not affect the bankruptcy estate or does not have a "close nexus" to the outcome of the bankruptcy case or the payment of pre-bankruptcy creditors. Here, ALF's plan of reorganization already has been approved by the bankruptcy court, and as soon as the plan is effective – which is expected within a matter of days – the bankruptcy estate will cease to exist. Accordingly, the removed action will be incapable of affecting the bankruptcy estate. The removed action also does not have a "close nexus" to the payment of pre-bankruptcy creditors under ALF's plan of reorganization. That plan sets up a trust from which ALF's unsecured creditors are to be paid 22.5% of their allowed claims. The payment of the 22.5% is not tied to, or affected by, the results of the New York lawsuit. To the extent that the trust property is insufficient to pay those claims, reorganized ALF – not the defunct bankruptcy estate – will be required to make up the shortfall. And if Freightliner does not prevail on its claims, the monies earmarked in the trust for the payment of those claims will revert to ALF and will not become available to pay the claims of other unsecured creditors. ALF's pre-bankruptcy creditors are completely insulated from the consequences of any positive or negative result in the removed action. Indeed, confirmation of ALF's plan, and implementation of the provisions of the plan that sever all connections between ALF's pre-bankruptcy creditors and the results in the removed action, not only destroy any nexus between the removed action and ALF's bankruptcy, but also ensure that the prosecution and defense of the removed action have no effect on the former estate or its creditors.

       Furthermore, even if the Court were to conclude that "related to" jurisdiction exists, remand would be appropriate under Section 1452(b), 28 U.S.C., because (a) the outcome of the removed action would have no effect whatsoever on the administration of the bankruptcy

estate because it would be prosecuted post-plan; (b) the claims are based solely on state law; (c) comity considerations favor remand because federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate; and (d) the action is unrelated to the bankruptcy case.

Alternatively, abstention principles counsel remand. Section 1334(c)(2), 28 U.S.C., requires abstention where (a) the removed action is based on a state law claim; (b) the action is merely "related to" a bankruptcy case (as opposed to actually being a bankruptcy case or an action that would not exist in the absence of the bankruptcy case); (c) Section 1334 provides the sole basis for federal jurisdiction; (d) the removed action was commenced in state court; and (e) that action can be timely adjudicated in state court. Thus, even if there were "related to" jurisdiction, abstention would be mandatory here because all of these criteria are met. And even if abstention were not mandatory, the Court, pursuant to Section 1334(c)(1), 28 U.S.C., would have discretion to abstain and remand due to the very tangential relationship the removed action has with ALF's bankruptcy.

Accordingly, the Court should remand the removed action, which is based solely on state law, to the Supreme Court of the State of New York, New York County, were it will timely be adjudicated in that court's Commercial Division.

## **FACTUAL BACKGROUND**

### **The Asset Sale**

Pursuant to an Asset Purchase and Sale Agreement, dated as of December 14, 2005 (the "Asset Purchase Agreement"), plaintiff Freightliner (as shareholder) and certain of its subsidiaries (the "Selling Subsidiaries") sold the assets of the fire apparatus and emergency vehicles business operated by the Selling Subsidiaries, to defendant ALF. (Declaration of Jordan Brackett, dated July 21, 2008 ("Brackett Decl.") Ex. 1.)

Simultaneously with the execution of the Asset Purchase Agreement, Freightliner and ALF entered into a Transition Services Agreement, dated as of December 14, 2005 (the "Transition Services Agreement"), pursuant to which Freightliner agreed to provide certain goods and services to assist ALF in running the business it had acquired from Freightliner. (Brackett Decl. Ex. 2.)

**New York Law/New York Exclusive Jurisdiction**

The Asset Purchase Agreement and the Transition Services Agreement provide that they are governed by New York law.  (Brackett Decl. Ex. 1 § 12.05; *id* Ex. 2 § 14.4.)

In the Asset Purchase Agreement, "Sale Documents" was defined to include the Asset Purchase Agreement and the Transition Services Agreement (Brackett Decl. Ex. 1 at 12), and Freightliner and ALF

> (a) agree[d] that any Action[2] with respect to any Sale Document may be brought only in the courts of the State of New York or of the United States of America for the Southern District of New York, (c) accept[ed] for itself and in respect of its property, generally and unconditionally, the exclusive jurisdiction of such courts, [and] (c) irrevocably waive[d] and objection, including, without limitation, any objection to the laying of venue or based on the ground of <u>forum non conveniens</u>, which it may now or hereafter have to the bringing of any Action in those jurisdiction . . . .

*(Brackett Decl. Ex. 1 § 12.11.)*

---

[2] "Action" was broadly defined to mean "an action, suit, litigation, arbitration, investigation, complaint, contest, hearing, inquiry, inquest, audit, examination or other proceeding, whether civil or criminal, administrative, investigative or appellate, in law or equity before any arbitrator or Governmental Body."  (Brackett Decl. Ex. 1 at 2.) "Governmental Body" was defined to include any court.  (Brackett Decl. Ex. 1 at 7.)

**The New York Action**

On December 10, 2007, Freightliner commenced the removed action against ALF in New York Supreme Court, New York County (Index No. 604037/07) (the "New York Action"). (Brackett Decl. Ex. 3.) In the New York Action, Freightliner has sued ALF for breach of contract to recover over $10 million that ALF owes it under the Transition Services Agreement.

**The Delaware Bankruptcy**

On January 28, 2008, ALF filed a voluntary chapter 11 case in the United States Bankruptcy Court for the District of Delaware (Case No. 08-10178) (the "Delaware Bankruptcy"). (Brackett Decl. Ex. 4.) As a result, the New York Action was automatically stayed pursuant to Section 362 of the Bankruptcy Code.[3]

On March 27, 2008, ALF filed its Fourth Amended Disclosure Statement (the "Disclosure Statement") and its Third Amended Plan of Reorganization (the "Plan"). (Brackett Decl. Exs. 5 and 6.) As discussed below, the Plan was confirmed by an order of the Delaware Bankruptcy Court on May 23, 2008.

On the Effective Date of the Plan, the bankruptcy estate – which will include any contractual or common law counterclaims that ALF might have against Freightliner – will revert back to ALF. (Brackett Decl. Ex. 6 § 8.2.) As a result, any recovery that ALF might obtain from such counterclaims would flow to ALF alone, and would not be shared in by any of the pre-bankruptcy creditors.

The Plan provides that pre-bankruptcy unsecured creditors of ALF will receive 22.5% of their allowed claims, and establishes a Trust of more than $6.1 million (the "Trust

---

[3] Section 362 of the Code provides in pertinent part that the filing of a bankruptcy petition stays the "continuation . . . of a judicial . . . proceeding against the debtor that was . . . commenced before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1).

Property") to pay such claims. (Brackett Decl. Ex. 6 § 8.1(c).) $1.1 million of the $6.1 million is earmarked to pay Freightliner's allowed claims. (*Id.*) If the Trust Property is not sufficient to pay 22.5% of all of the creditors' allowed claims, including Freightliner's claim, the reorganized ALF – *not* the bankruptcy estate – is required to fund the shortfall. (*Id.*) Furthermore, if Freightliner's claim is defeated, the $1.1 million earmarked for the potential payment of that claim is not made available for the payment of other creditors; instead, it returns to reorganized ALF. (*Id.*) The Plan expressly deprives the Trust of the ability to take any action with respect to Freightliner's claims against ALF, leaving that power solely to ALF. (Brackett Decl. Ex. 6 § 10.1.)

On May 23, 2008, the Delaware Bankruptcy Court issued an order confirming the Plan (the "Confirmation Order"). (Brackett Decl. Ex. 7.) The Confirmation Order is a final order, no longer subject to approval. There are no appeals pending as to the Confirmation Order and such Order has not been stayed or revoked. As a result, the Delaware Bankruptcy essentially is completed. As soon as the "Effective Date" of the Plan – which is imminent (*see* Brackett Decl. Ex. 6 § 2.50, art. XV) – there no longer will be a bankruptcy estate, and all of the property of the former estate (including any common law or contractual counterclaims that ALF may have against Freightliner) will revert to ALF. (Brackett Decl. Ex. 6 § 8.2.)

Accordingly, on May 23, 2008, ALF issued a press release, announcing the Confirmation Order, ALF's emergence from bankruptcy, and ALF's ability to "move forward." (Brackett Decl. Ex. 8.)

## ALF's Notice of Removal

On June 20, 2008, ALF filed a Notice of Removal, removing the New York Action – this action – to this Court.

## ARGUMENT

## THE NEW YORK ACTION SHOULD BE REMANDED

The New York Action should be remanded because (i) the notice of removal was not timely, (ii) the claims herein do not fall within bankruptcy subject matter jurisdiction, (iii) equity counsels such remand, and (iv) even if this Court disagrees with the above, it can and should abstain from hearing the claims in the New York Action.

## I.

## ALF'S NOTICE OF REMOVAL WAS UNTIMELY

The New York Action should be remanded because ALF's Notice of Removal was untimely. Pursuant to Bankruptcy Rule 9027(a)(2), with respect to a civil action (such as the New York Action) initiated before commencement of a bankruptcy case, a notice of removal must be filed

> within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under Section 362 of the code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

ALF states that its Notice of Removal is timely because it complied with Bankruptcy Rule 9027(a)(2)(B), providing for removal within "30 days after entry of an order terminating a stay." ALF is incorrect. The bankruptcy court has not issued an "order terminating a stay" and, significantly, ALF did not attach to, or cite in, its Notice of Removal any such order.

An "order terminating a stay" is a bankruptcy term of art with a specific meaning. Section 362(d) of the Code provides that a court may grant relief from the automatic stay by (among other things) "terminating" it. 11 U.S.C. § 362(d). Bankruptcy Rule 4001(a)(1) provides that a party's request for such relief should be made by motion which, pursuant to

Bankruptcy Rule 9014, should be made on reasonable notice with an opportunity to be heard. Accordingly, when Rule 9027(a)(2)(B) speaks of an "order terminating" the automatic stay, it is referring to an order, pursuant to Section 362(d), expressly doing just that – i.e., "terminating" the stay – in response to a motion made pursuant to Rule 4001(a)(1).

Thus, for example, in *In re Pessodelis*, 234 B.R. 52, 59 (Bankr. W.D. Pa. 1999), the court measured the timeliness of removal from the date it issued an order granting a motion pursuant to Rule 4001(a)(1) to "terminate" the automatic stay and enabling plaintiffs to pursue an action pending against the debtor that had been filed in state court. Because the debtor had removed the case more than thirty days after the order terminating the stay, the court found removal untimely.

In the Delaware Bankruptcy, no motion to terminate the stay with respect to the New York Action was ever made; and the Delaware Bankruptcy Court never issued an order terminating the stay. Accordingly, ALF's reliance on Rule 9027(a)(2)(B) is misplaced.

The Confirmation Order is not "an order terminating a stay." Indeed, nothing in the Confirmation Order – or in the Plan confirmed by the Confirmation Order – makes any mention of any stay. Although the stay by statute *expires* by dint of the discharge granted in the Plan, 11 U.S.C. § 362(c)(2)(C) (*see* Brackett Decl Ex. 6 § 17.9), such *automatic expiration* is not an "order terminating a stay" referred to by Rule 9027(a)(2)(B).

Nor should such automatic expiration of the stay pursuant to the Code be broadly construed to constitute an "order terminating a stay" in order to find ALF's removal timely. Had its drafters meant to do so, Rule 9027(a)(2) easily could have referred to "*discontinuation*" of the stay. But Rule 9027(a)(2) does not use such language, and the notion of *expiration* by operation of statute in addition to *termination* by court order should not be read into the Rule. Removal

statutes are to be strictly construed and, out of respect for the limited jurisdiction of the federal courts and the rights of states, federal courts must resolve any doubts concerning removal in favor of remanding the case to state court. *In re Methyl Tertiary Butyl Ether ("MTBE")* *Products Liab. Litig.*, 488 F.3d 112 (2d Cir. 2007) (citing *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32, 123 S. Ct. 366, 369 (2002).[4]

ALF does not – and cannot – assert compliance with Rule 9027(a)(2)(A) because far more than 90 days have passed since the "order for relief" (i.e., the January 28, 2008 commencement date for the Delaware Bankruptcy). Significantly, it was within ALF's power to preserve Rule 9027(a)(2)(A) for its use. *See* 10 COLLIER ON BANKRUPTCY ¶ 9027.05[1] (2008) ("It is not uncommon, particularly in larger cases, for a debtor to seek and obtain an order extending the time to remove all pending litigation to some point in the future, thus avoiding the necessity for rushed decisions when other more important matters may have the attention of management.")). *See also In re Jevic Holding Corp., et al.*, No. 08-11006 (Bankr. D. Del.) (filed June 19, 2008) (wherein debtors moved to extend deadline to remove actions commenced prior to the petition date) (J. Shannon); *In re Aegis Mortgage Corp., et al.*, No. 07-11119 (Bankr. D. Del.) (filed Nov. 9, 2007) (wherein debtors moved to extend deadline to remove actions

---

[4] *But see In re Lawson*, 228 B.R. 195, 198 (Bankr. E.D. Tenn. 1998), holding that a bankruptcy court order granting debtors a discharge in a Chapter 7 case qualified as "an order terminating a stay" under Rule 9027(a)(2)(B). We respectfully submit that *Lawson*, which of course is not binding on this Court, was incorrectly decided and should not be followed. The *Lawson* court wrongly conflated the well-understood concept of an express order "*terminating*" the stay pursuant to Section 362(d) with the automatic *expiration* of the stay pursuant to Section 362(c)(2) – despite the court's recognition that "the discharge order is not the traditional method by which relief from the automatic stay is obtained . . . ." *Id.* at 198. In addition to doing violence to the plain terms of Rule 9027, the result in *Lawson* also sets a trap for the unwary debtor who will only be on the lookout for the "traditional" type of "order terminating a stay" – i.e., an order made in response to a motion to terminate the stay – and will only find out too late that the time to remove has passed because the stay expired by statute.

to and after the petition date) (J. Shannon). ALF, however, failed to avail itself of this opportunity.[5]

Accordingly, because ALF's removal was not timely, this Action should be remanded.

## II.

### THE CLAIMS IN THE NEW YORK ACTION DO NOT "ARISE UNDER" TITLE 11, AND DO NOT "ARISE IN" AND ARE NOT "RELATED TO" THE DELAWARE BANKRUPTCY ACTION

Section 1452(a), 28 U.S.C., invoked by ALF as the basis of its removal, provides in pertinent part that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b), in turn, vests the district courts with jurisdiction over all civil proceedings "arising under title 11," "arising in . . . cases under title 11," and "related to cases under title 11." 28 U.S.C. § 1334(b).

Because the claims herein do not "arise under" Title 11, and also did not "arise in" and are not "related to" the Delaware Bankruptcy, the New York Action should be remanded to the state court where it was filed.

### A.    The Claims Asserted In The New York Action Do Not "Arise Under" Title 11

Claims "arising under" Title 11 are those that invoke substantive rights created by the Bankruptcy Code. *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 69-70 (2d Cir. 2002); *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006). The claims in the New York Action, based on ALF's pre-petition breach of the Transition Services Agreement, clearly do not "arise under" Title 11.

---

[5] Rule 9027(a)(2)(C) also has no application here because a trustee was not appointed in the Delaware Bankruptcy.

**B.    The Claims In The New York Action**
**Did Not "Arise In" The Delaware Bankruptcy**

        Proceedings "arise in" a bankruptcy case if they have no existence outside of the

bankruptcy – such as administrative matters, orders to turn over property of the estate, and

determinations of the validity, extent, or priority of liens. *Stoe*, 436 F.3d at 216; *Winstar*

*Holdings, LLC v. Blackstone Group L.P.*, No. 07-4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10,

2007) (same; citing cases and authorities).

        The claims asserted in the New York Action clearly are not limited to the context

of a bankruptcy case.  Indeed, the fact that the New York Action was filed before the Delaware

Bankruptcy was commenced, and that the claims herein relate solely to ALF's pre-petition

breach of its contractual obligations to Freightliner, easily leads to the conclusion that the claims

asserted herein did not "arise in" the Delaware Bankruptcy.

**C.    The New York Action Is Not**
**"Related To" The Delaware Bankruptcy**

        The New York Action also is not "related to" the Delaware Bankruptcy.  "[A]

proceeding is 'related to' a bankruptcy case if '*the outcome of that proceeding could conceivably*

*have any effect on the estate being administered in bankruptcy.*'"  *In re Am. Home Mortgage*

*Holdings, Inc.*, No. 07-11047, No. 07-51738, 2008 WL 2600987, at *5 (Bankr. D. Del. June 27,

2008) (emphasis in original) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984));

*see also  In re Refco, Inc. Sec. Litig.*, No. 07 MDL 1902, No. 07-11604, 2008 WL 1827644, at *3

(S.D.N.Y. April 21, 2008) (same; citing *Pacor*); *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308,

317 (S.D.N.Y. 2003) (same; citing *Pacor*).

        "The Supreme Court has explained that the critical component of the *Pacor* test is

that 'bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of

the debtor.'"  *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004) (quoting *Celotex Corp. v.*

*Edwards*, 514 U.S. 300, 308 n.6, 115 S. Ct. at 1499 n.6 (1995)); 1 Collier On Bankruptcy

¶ 3.01[4][c][v] (2008) ("litigation that would not have an impact upon the administration of the

bankruptcy case, or on property of the estate, or on the distribution to creditors, cannot find a

home in the district court based on the court's bankruptcy jurisdiction").

Against this backdrop, when claims will be pursued in a post-plan environment in

which the bankruptcy estate will have ceased to exist and, therefore, such claims will be

incapable of having an effect on the bankruptcy estate, "retention of bankruptcy jurisdiction may

be problematic." *See In re Resorts Int'l.*, at 164-65; *Celotex*, 514 U.S. at 308, 115 S. Ct. at 1499

("'related to' jurisdiction cannot be limitless").

"It is generally recognized that although the jurisdiction of the bankruptcy court

continues until the Chapter 11 case is closed, once a plan has been confirmed, the court's

jurisdiction begins to weaken," *In re H & L Developers, Inc.*, 178 B.R. 71, 76 (Bankr. E.D. Pa.

1994) (internal quotation omitted), and the court "has a fairly narrow jurisdiction." *In re

Eastland Partners Ltd. P'ship*, 199 B.R. 917, 919-20 (Bankr. E.D. Mich. 1996) (citing multiple

cases rejecting "related to" jurisdiction over post-plan claims governed by state law).

Accordingly, to the extent that post-plan "related to" jurisdiction even exists, it

will only be found to lie where claims have "a close nexus to the bankruptcy plan or proceeding,

as when a matter affects the interpretation, implementation, consummation, execution, or

administration of a confirmed plan . . . ." *In re Resorts Int'l*, 372 F.3d at 168-69.[6,7]

---

[6] The test for post-plan "related to" jurisdiction in the Second Circuit is also predicated on there being a "close nexus." *See, e.g., In re WorldCom, Inc.*, 351 B.R. 130, 133 (Bankr. S.D.N.Y. 2006) ("a bankruptcy court has post-confirmation jurisdiction if two requirements are met. First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan.... Second, the plan must provide for the retention of jurisdiction over the dispute."(citations and quotations omitted); *Guccione v. Bell*, No. 06-492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006) ("...a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements. First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and

Merely stating this test proves its inapplicability here.  Manifestly, the claims in the New York Action will not *affect* the interpretation, implementation, consummation, execution, or administration of the Plan.  Resolution of the claims asserted by Freightliner in the New York Action will not involve the Plan or require interpretation of the Plan; only the terms of the Transition Services Agreement will matter.  Furthermore, as discussed, any recovery by Freightliner will not the alter the recovery of the other unsecured creditors.  *Cf. In re Shenango Group*, 501 F.3d 338, 344 (3d Cir 2007) (finding "close nexus" where dispute "concerns [debtor's] Reorganization Plan" and the debtor's ability to fund related pension plan).  This is

---

second, the plan must provide for the retention of jurisdiction over the dispute.") (citations omitted). Here, even though the Plan contains a general reservation of jurisdiction to determine or liquidate "Claims" against ALF, there is no mention of the New York Action let alone any reservation of jurisdiction over the New York Action.  In any event, because ALF fails the "close nexus" test, there is no need for this Court to address the second part of the test in the New York bankruptcy cases.

[7] *But see In re Seven Fields Dev. Corp.*, 505 F.3d 237, 265-66 (3d Cir. 2007) ("After our present consideration of *Resorts*, we are satisfied that the 'close nexus' test is applicable to 'related to' jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred. *** For these reasons, we conclude that with respect to 'related to' jurisdiction, the *Pacor* test applies in all disputes raised pre-confirmation and the 'close nexus' test applies in all disputes raised post-confirmation, regardless of when the conduct alleged in the complaint occurred."). Here, the New York Action was commenced pre-confirmation, which suggests that the *Pacor* test ("any conceivable effect") is the proper test. However, both *Resorts* and *Seven Fields* were cases where the debtor or its successor brought an action against a non-debtor after confirmation of a plan. Here, the non-debtor (Freightliner) commenced its action pre-confirmation and is disputing the Court's post-confirmation jurisdiction to hear and determine the still pending and still unresolved New York Action.  Therefore, the situation in this case is akin to a post-confirmation action by the debtor and implicates the "close nexus" test.

However, Freightliner believes that regardless of whether the test is the "any conceivable effect" test of *Pacor* or the "close nexus" test of *Resorts*, the New York Action has insufficient connection to ALF's former chapter 11 case to provide this Court with "related to" jurisdiction.  This is because ALF's pre-bankruptcy creditors are completely insulated from the consequences of any positive or negative result in the New York Action.  Indeed, confirmation of ALF's Plan and implementation of the provisions of the Plan that sever all connections between ALF's pre-bankruptcy creditors and the results in the New York Action not only destroy any nexus between the New York Action and the Delaware Bankruptcy, but also ensure that the prosecution and defense of the New York Action have no effect on the former estate or its creditors.

This result is entirely consistent with the Second Circuit's recent decision in *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), where the Court of Appeals held that the bankruptcy court lacked jurisdiction to enjoin third parties from suing the debtor's insurance carrier for tortuous conduct that did not implicate or seek to recover proceeds of the debtor's insurance policies, but instead represented direct claims against the carrier that were personal to the third parties. The lack of jurisdiction was predicated in large part on the lack of connection between the claims of the third parties and any res that was property of the debtor's estate. *Id.* at 68. The absence of connection or effect on the estate and its creditors is what defeated the bankruptcy court's attempt to exercise jurisdiction in the *Johns-Manville* case.  The same absence of connection or effect is present in this case.

true even if Freightliner's recovery against ALF exceeds the $1.1 million placed in the Trust to go toward payment of its claims.  As noted, if the Trust Property is insufficient to pay 22.5% of all unsecured creditors' allowed claims, the reorganized ALF – not the estate – will be required to make up the shortfall.  (Brackett Decl. Ex. 6 § 8.1(c).)  In any event, payment to Freightliner will not change reorganized ALF's obligation to pay 22.5% to the other pre-bankruptcy unsecured creditors.  Accordingly, the claims in the New York Action do not have a "close nexus" with the Plan and, accordingly, fall outside the Court's "related to" bankruptcy jurisdiction.[8]

Equally not "related to" the Delaware Bankruptcy would be any contractual or common law counterclaims that ALF might assert in the New York Action.  Those claims would be governed by the terms of the Transition Services Agreement and/or the common law; they will not involve the Plan or require its interpretation.  Furthermore, those counterclaims – and any recovery thereon – would belong solely to the reorganized ALF.  (Brackett Decl. Ex. 6 § 8.2.)  Because ALF's creditors will not share in any recovery from Freightliner based on any contractual or common law counterclaims that ALF may have (*see* Brackett Decl. Ex. 6, § 8.1(c)), such counterclaims would not have a "close nexus" to the Plan.

**D.    The New York Action Should Be Remanded Because Federal Subject Matter Jurisdiction Totally Is Lacking**

Because bankruptcy subject matter jurisdiction over the New York Action does not exist under Section 1334(b) (and thus the bankruptcy removal statute, 28 U.S.C. § 1452(a),

---

[8] Even if the New York Action impacted creditors' recovery from the Trust – which it will not – there still would not be "related to" bankruptcy jurisdiction. *See In re Insilco Techs., Inc.*, 330 B.R. 512, 524 (Bankr. D. Del. 2005) ("[I]f the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant.  Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts.").

does not apply), it should be remanded because alternative federal subject matter jurisdiction does not exist.

The general, non-bankruptcy removal statute, 28 U.S.C. § 1441(b, permits removal only on the traditional federal subject matter bases, federal question jurisdiction and diversity jurisdiction. The strictly contractual claims in the New York Action do not arise under the laws of the United States, thus precluding federal question jurisdiction. And both Freightliner and ALF are organized in Delaware, thereby precluding diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

Because federal subject matter jurisdiction does not exist, the New York Action should be remanded to New York Supreme Court which the parties agreed would have exclusive jurisdiction over any action with respect to the Asset Purchase Agreement or the Transition Services Agreement. (Brackett Decl. Ex. 2 § 12.11.)[9]

## III.

### EVEN IF THERE IS "RELATED TO" JURISDICTION, THE COURT CAN AND SHOULD REMAND THE NEW YORK ACTION BASED ON EQUITABLE PRINCIPLES

Even if the Court were to determine that the New York Action somehow has a "close nexus" to the Plan and thus "relates to" the Delaware Bankruptcy, the Court can and should remand this action based on equitable principles. *See* 28 U.S.C. § 1452(b).

Courts in this District look to the following non-exclusive list of factors in determining whether equitable remand is appropriate: "(1) the effect on the efficient

---

[9] Federal jurisdiction over the New York Action is not something that Freightliner bears the burden of *dis*proving. "It is . . . hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction. That party must allege a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998. Accordingly, ALF now bears the burden of proving federal jurisdiction over the New York Action.

administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." *Guccione v. Bell*, 2006 WL 2032641, at *5.

Thus, in *Guccione*, the court found that these factors tilted "heavily in favor of remand" where, as here, (1) the outcome of the action would have no effect whatsoever on the administration of the bankruptcy estate because it would be prosecuted post-plan; (2) state law issues overwhelmingly predominate; (3) comity considerations favor remand because "[i]t is well settled that comity considerations dictate that federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate"; and (4) the action was unrelated to the main bankruptcy case. 2006 WL 2032641, at *5-*6 (internal quotation omitted).

Accordingly, even if this Court finds that the notice of removal was timely, and that the claims in the New York Action is "related to" the Delaware Bankruptcy, the New York Action should be remanded.

### IV.

### EVEN IF THERE IS "RELATED TO" JURISDICTION, THE COURT CAN AND SHOULD ABSTAIN AND REMAND

Alternatively, the Court should abstain from hearing the New York Action and remand it to New York Supreme Court.

Even if ALF's removal was timely and "related to" bankruptcy jurisdiction existed, the Court is required to abstain from deciding the New York Action and remand it "if the elements of section 1334(c)(2) are satisfied. A party seeking mandatory abstention must prove each of the following: (1) the motion to abstain was timely; (2) the action is based on a state law

claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be 'timely adjudicated' in state court." *In re Ames Dept. Stores, Inc.*, No. 01-42217, No. 01-8153, 2006 WL 1288586, at *12 (Bankr. S.D.N.Y. April 19, 2006); *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005) (concluding that mandatory abstention can be appropriate for a removed case).

Freightliner has satisfied all six of these criteria. (1) The motion is timely, and (2) the New York Action is based on state law claims. (3) Assuming *arguendo* that the New York Action is "related to" the Delaware Bankruptcy, as discussed above it most certainly does not "arise in" the Delaware Bankruptcy nor does it "arise under" the Bankruptcy Code. (4) As also discussed above, because of the lack of a federal question and diversity between the parties, the only conceivable basis for federal jurisdiction over the New York Action is 28 U.S.C. § 1334. Finally, (5) the New York Action was commenced in state court, and (6) can be timely adjudicated there. *See Tech Outsource Solutions, LLC v ENI Tech., Inc.*, No. 02-cv-6433, 2003 WL 25214, at *4 (W.D.N.Y. Jan. 23, 2003) (abstaining from and remanding the case to the commercial division of the New York State Supreme Court and concluding that the matter could timely adjudicated there because the commercial division was "designed to be 'a world-class forum for the resolution of business disputes.'"). Accordingly, pursuant to 28 U.S.C. § 1334(c)(2), this Court must abstain from hearing the New York Action.

Even if the Court were to conclude that abstention is not mandatory, it may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Here, the very factors that make the New York Action so very tangential to the Delaware Bankruptcy counsel discretionary abstention and remand. *See In re*

*Bay Point Assocs.*, No. 07-1492, 2008 WL 822122 (E.D.N.Y. March 19, 2008) (affirming

bankruptcy court's discretionary abstention where, *inter alia*, degree of relatedness to bankruptcy

case was minimal, abstention would not negatively affect administration of estate, relief sought

by plaintiff would not realize any monies for the benefit of creditors, issues of state law

predominated, and judicial economy would not be served by bankruptcy court's retention of

jurisdiction).

## CONCLUSION

For the foregoing reasons, Freightliner respectfully submits that the New York

Action should be remanded to the Supreme Court of the State of New York, New York County.

Dated:   New York, New York
         July 21, 2008

                        FRIEDMAN KAPLAN
                          SEILER & ADELMAN LLP


                        /s/ Lance J. Gotko
                        William P. Weintraub
                        wweintraub@fklaw.com
                        Lance J. Gotko
                        lgotko@fklaw.com
                        L. Reid Skibell
                        rskibell@fklaw.com
                        Jordan I. Brackett
                        jbrackett@fklaw.com
                        1633 Broadway
                        New York, NY 10019-6708
                        (212) 833-1100 – Phone
                        (212) 833-1250 – Facsimile

                        *Attorneys for Plaintiff Freightliner LLC*